# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MICHAEL HAZEL,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 3:13-cv-332 |
| - vs - | | | District Judge Timothy S. Black |
| | | | Magistrate Judge Michael R. Merz |
| WARDEN, Chillicothe Correctional Institution, | | | |
| | | : | |
| | Respondent. | | |

## REPORT AND RECOMMENDATIONS

Petitioner Michael Hazel brought this habeas corpus action *pro se* under 28 U.S.C. § 2254 to obtain relief from his convictions in the Clark County Common Pleas Court for domestic violence in violation of Ohio Revised Code § 2919.25.

Hazel pleads the following grounds for relief:[1]

> **Ground One**: The trial court committed prejudicial error and abused its discretion by denying defense motion to dismiss all counts of domestic violence and denied the petitioner of his constitutional rights under the 5th, 6th, and 14th Amendments.
>
> **Supporting Facts:**
> [1.]   (Mr. Hazel and Ms. Sheets did not live together on 11-4-10 and 11-5-10).
> [2.]   (Mr. Hazel and Ms. Sheets did not have any children together on 11-4-10 and 11-5-10).
> [3.]   (Mr. Hazel and Ms. Sheets have never lived together).
> [4.]   (Mr. Hazel and Ms. Sheets did not cohabitate together on 11-4-10 and 11-5-10).

---

[1] Grounds for Relief and Supporting Facts were copied in their entirety from the attached sheet to the standard Petition form. For the ease of the reader, the Court has converted the claims from their original format of all capitalization to lower case, leaving capitalization only where appropriate.

[5.]   (Mr. Hazel and Ms. Sheets have never cohabitated together).

[6.]   (Mr. Hazel and Ms. Sheets were not family or household members on 11-4-10 and 11-5-10).

[7.]   (Mr. Hazel and Ms. Sheets have never been family or household members).

[8.]   (Mr. Hazel and Ms. Sheets did not share any familial or financial responsibilities together on 11-4-10 and 11-5-10).

[9.]   (Mr. Hazel and Ms. Sheets have never had any commingled assets together).

[10.]   (Mr. Hazel and Ms. Sheets have never been married to each other).

**Ground Two**: The trial court's evidential [sic] rulings, cumulatively, effected an abuse of discretion and a denial of due process to appellant and denied the petitioner of his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:**
[1]. (Mr. Hazel had an all-white jury).
[2]. (Mr. Hazel's jury consisted of the friends of prosecutor's, judge's, public defender's and sheriff's).
[3]. (Mr. Hazel's mistrial was fraudulent).
[4]. (Mr. Hazel has never been convicted of aggravated burglary against a *"family or household member"*).
[5]. (Mr. Hazel's 2009 felony domestic violence conviction, was not committed against a *"family or household member"*).
[6]. (Mr. Hazel's jury was given incomplete and fraudulent jury instructions).
[7]. (Mr. Hazel was not allowed to be convicted of 3rd degree felonies).
[8]. (Mr. Hazel's equal protection rights and his due process rights have been violated, because he had 27 white people and 1 black person on his venire).
[9]. (Mr. Hazel had a biased trial judge).
[10]. (Mr. Hazel had a biased jury).

**Ground Three:**   Appellant was denied due process by prosecutorial misconduct in presenting evidence of alleged charges that she knew would not support a conviction and denied the petitioner of his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:**
[1]. (Ms. Smith had Miss. Sheets' medical records 2 months prior to Mr. Hazel's trial).

[2]. (Ms. Smith knew that Mr. Hazel and Miss. Sheets have never lived together).

[3]. (Ms. Smith knew that on 11-4-10 and 11-5-10, that Mr. Hazel and Miss. Sheets did not have any children together).

[4]. (Ms. Smith knew that Miss. Sheets did not move to 119 Dartmouth Dr. until 9-1-10).

[5]. (Brian Driscoll (Mr. Driscoll), the other assistant prosecuting attorney for Clark County, Ohio, who was representing the State of Ohio at the time, knew that Miss. Sheets did not get pregnant at 119 Dartmouth Dr.).

[6]. (Ms. Smith knew that Mr. Hazel had never committed aggravated burglary against a *"family or household member"* in Case No. 03-CR-592).

[7]. Ms. Smith knew that officer Paul Herald did not arrest Mr. Hazel for domestic violence on December 20th, 2008, nor did he arrest Mr. Hazel for domestic violence on February 28th, 2009, in Case No. 09-CR-212).

[8]. (Ms. Smith knew that Mr. Hazel did not commit domestic violence against a *"family or household member"* in Case No. 09-CR-212).

[9]. (Ms. Smith knew that Mr. Hazel did not hit Miss. Sheets with a hammer before she went to the Grand Jury for an indictment).

[10]. (Ms. Smith knew that Mr. Hazel did not hit Miss. Sheets with a hammer prior to Mr. Hazel's trial).

[11]. (Ms. Smith knew that David Andrew Wilson (Mr. Wilson) did not convict Mr. Hazel of domestic violence in Case No. 03-CR-592, before she went to the Grand Jury for an indictment).

[12]. (Ms. Smith knew that Mr. Wilson did not convict Mr. Hazel of domestic violence prior to Mr. Hazel's trial).

**GROUND FOUR**: Due to the ineffective assistance of appellate counsel, the petitioner was denied his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:**
[1]. (Mr. Hazel sent J. Allen Wilmes (Mr. Wilmes)[Mr. Hazel's appellate counselor] numerous notices of legal instructions).

[2]. (Mr. Wilmes was ineffective, because he did not raise the issue about Mr. Hazel not being allowed to be convicted of 3rd degree felonies).

[3]. (Mr. Wilmes was ineffective, because he did not raise the issue about Mr. Hazel's 10-CR-828 indictment and Count One of his 10-CR-808 indictment being insufficient).

[4]. (Mr. Wilmes was ineffective, because he did not raise the issue that Mr. Hazel did not commit aggravated burglary against a *"family or household member"* in Case No. 03-CR-592).

3

[5]. (Mr. Wilmes was ineffective because he did not raise the issue about Mr. Hazel's jury verdict forms not complying with R.C.2945.75(a)(2)).

[6]. (Mr. Wilmes was ineffective because he did not raise the issue about Mr. Hazel's complaint being insufficient).

[7]. (Mr. Wilmes was ineffective because he did not raise the issue about James Marshall (Mr. Marshall), Mr. Hazel's trial counselor being ineffective before and during Mr. Hazel's trial).

[8]. (Mr. Wilmes was ineffective because he did not raise the issue that David Andrew Wilson (Mr. Wilson), Deputy Bradley A. Tillman (Mr. Tillman) and officer Paul Herald (Mr. Herald), all gave perjured testimony at Mr. Hazel's trial).

[9]. (Mr. Wilmes was ineffective because he did not raise the issue that the Hon. Judge Douglas M. Rastatter (Mr. Rastatter), gave Mr. Hazel's jury incomplete and fraudulent jury instructions).

[10]. (Mr. Wilmes was ineffective because he did not raise the issue about Mr. Hazel did not commit domestic violence against a *"family or household member"* in Case No. 09-CR-212).

**Ground Five**: Due to the ineffective assistance of trial counsel, the petitioner was denied his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:** [1.] (James Marshall (Mr. Marshall), Mr. Hazel's trial counselor was ineffective because he did not file a pretrial motion pursuant to Crim.R.l2(C)(J )(2 )(3)).

[2]. (Mr. Marshall was ineffective because he let Mr. Hazel go to trial with an all-white jury).

[3]. (Mr. Marshall was ineffective because he let Mr. Hazel go to trial with a biased jury that he knew were friends of his, the Clark County Prosecutor's Office, the Clark County Sheriff's Department, and Clark County judge's).

[4]. (Mr. Marshall was ineffective because he allowed Mr. Hazel to be convicted of third (3rd) degree felonies).

[5]. (Mr. Marshall was ineffective because he did not file any motions pertaining to Mr. Hazel's jury verdict forms not complying with R.C. 2945.75(a)(2)).

[6]. (Mr. Marshall was ineffective because he did not file any motions pertaining to Mr. Hazel's jury verdict forms not complying with Crim.R.31(A)).

[7]. (Mr. Marshall was ineffective because he did not raise the issue that Mr. Wilson, Mr. Tillman and Mr. Herald, all perjured themselves at Mr. Hazel's grand jury, prior to Mr. Hazel's trial, Case Nos.10-CR-808, 10-CR-827 and 10-CR-828).

[8]. (Mr. Marshall was ineffective because he did not raise the issue at Mr. Hazel's trial, that Mr. Wilson, Mr. Tillman and Mr.

4

Herald, had gotten on the stand at Mr. Hazel's trial, and gave perjured testimony to Mr. Hazel's trial jury).

[9]. (Mr. Marshall was ineffective because he did not file any *Brady* violation motions during Mr. Hazel's trial).

**Ground Six:** As a direct result of the essential elements of the offense being omitted because the specific statutory subsection was not included in the 10-CR-828 indictment or Count One of the 10-CR-808 indictment; the 10-CR-828 indictment and Count One of the 10-CR-808 indictment were defective and void; and because the 828 indictment and Count One of the 808 indictment are defective and void, the petitioner was denied his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:**
[1]. (There is no specific statutory subsection on Mr. Hazel's 10-CR-828 indictment).
[2]. (There is no specific statutory subsection in Count One of Mr. Hazel's 10-CR-808 indictment).
[3]. (Mr. Hazel's 10-CR-828 Indictment does not say that Mr. Hazel was living with Miss. Sheets as a *"person living as a spouse"*).
[4]. (Mr. Hazel's 10-CR-828 indictment does not say whether Mr. Hazel and Miss. Sheets had a child in common).
[5]. (Count One of Mr. Hazel's 10-CR-808 indictment does not say that Mr. Hazel was living with Miss. Sheets as a *"person living as a spouse"*).
[6]. (Count One of Mr. Hazel's 10-CR-808 indictment does not say whether Mr. Hazel and Miss. Sheets had a child in common).
[7]. (Mr. Hazel did not commit aggravated burglary against a *"family or household member"*, in Case No. 03-CR-592).
[8]. (Mr. Hazel did not commit domestic violence against a *"family or household member"*, in Case No. 09-CR-212).
[9]. (Mr. Hazel's domestic violence conviction, in Case No. 09-CR-212, is void).

**Ground Seven**: The jury verdict forms do not support Mr. Hazel's convictions, which has denied Mr. Hazel his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts**:
[1]. (There is no specific statutory subsection on Mr. Hazel's Count Two jury verdict form).
[2]. (There is no specific statutory subsection on Mr. Hazel's Count Three jury verdict form).

[3]. (Mr. Hazel's jury members did not sign either of his jury verdict forms).

[4]. (Neither of Mr. Hazel's jury verdict forms have the degree felony that he was convicted of on them).

[5]. (Neither of Mr. Hazel's jury verdict forms have any valid aggravating elements on them).

[6]. (Neither of Mr. Hazel's jury verdict forms say that Mr. Hazel and Miss Sheets are *"family or household members"*).

[7]. (Neither of Mr. Hazel's jury verdict forms say that Mr. Hazel was living with Miss Sheets as a *"person living as a spouse"*).

[8]. (Neither of Mr. Hazel's jury verdict forms say whether Mr. Hazel and Miss Sheets had a child in common).

[9]. (Mr. Hazel did not commit aggravated burglary against a *"family or household member"* in, Case No. 03-CR-592).

[10]. (Mr. Hazel did not commit domestic violence against a *"family or household member"* in, Case No. 09-CR-212).

[11]. (Mr. Hazel's domestic violence conviction, in Case No. 09-CR-212, is void).

**Ground Eight**: The trial court abused its discretion when it withheld admissible exculpatory evidence from Mr. Hazel's jury during his trial, which has denied Mr. Hazel his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:**

[1]. (Mr. Tillman perjured himself on the witness stand).

[2]. (Mr. Tillman perjured himself at Mr. Hazel's grand jury).

[3]. (Mr. Tillman filed a false statement against Mr. Hazel).

[4]. (Mr. Tillman never seen Mr. Hazel and Miss. Sheets in a physical altercation).

[5]. (Mr. Rastatter withheld Mr. Tillman's statement from Mr. Hazel's jury during Mr. Hazel's trial).

[6]. (Mr. Rastatter withheld Miss. Sheets medical records from Mr. Hazel's jury during Mr. Hazel's trial).

[7]. (Deputy Steve Elliott's (Mr. Elliott), testimony proves that Mr. Tillman gave perjured testimony at Mr. Hazel's trial).

[8]. (Deputy Andrew Biggert's (Mr. Biggert), testimony proves that Miss. Sheets gave true testimony at Mr. Hazel's trial, about her whereabouts, when the deputies kicked in her door).

**Ground Nine**: The trial court abused its discretion when it gave Mr. Hazel's jury incomplete and fraudulent instructions, which has denied Mr. Hazel his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:**

6

[1]. (Mr. Hazel and Miss. Sheets did not have a child in common on November 4th, 2010 and November 5th, 2010).

[2]. (Mr. Hazel and Miss. Sheets were not *"family or household members"* on November 4th, 2010 and November 5th, 2010).

[3]. (Mr. Hazel was not a *"person living as a spouse"* with Miss. Sheets on November 4th, 2010 and November 5th, 2010).

[4]. (Mr. Hazel was only an occasional sleep over guest of Miss. Sheets, throughout the duration of their relationship together).

[5]. (Mr. Hazel has never lived with Miss. Sheets before).

[6]. (Mr. Hazel did not commit aggravated burglary against a *"family or household member"*, in Case No. 03-CR-592).

[7]. (Mr. Hazel's "2009" domestic violence conviction, Case No. 09-CR-212, is void).

[8]. (Mr. Hazel was convicted of R.C. 2919.25).

**Ground Ten:** Mr. Hazel's due process and equal protection rights, under the Fifth and Fourteenth Amendments of the United States Constitution and its Ohio counterparts under Section 16, Article I of the Ohio State Constitution have been violated because the prosecution was permitted to respond to Mr. Hazel's A.C. Case Nos. 11-CA-101, 12-CA-22; T.C. Case Nos. 10-CR-808 and 10-CR-828 appellant's brief, which has denied Mr. Hazel his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:**

[1]. (The State did not respond to Mr. Hazel's post-conviction relief petition when it was in the trial court).

[2]. (When the Second District Appellate Court, for the State of Ohio, remanded Mr. Hazel's postconviction relief petition back to the trial court, so the trial court could give Mr. Hazel findings of fact and conclusions of law, the State filed a motion for proposed findings of fact and conclusions of law).

[3]. The State's motion for proposed findings of fact and conclusions of law are fraudulent).

[4]. (The trial courts findings of fact and conclusions of law are fraudulent).

**Ground Eleven**: The jury verdict forms do not support Mr. Hazel's convictions, which has denied Mr. Hazel his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:**

7

[1]. (There is no specific statutory subsection on Mr. Hazel's Count Two jury verdict form).

[2]. (There is no specific statutory subsection on Mr. Hazel's Count Three jury verdict form).

[3]. Mr. Hazel's jury members did not sign either of his jury verdict forms).

[4]. (Neither of Mr. Hazel's jury verdict forms have the degree felony that he was convicted of on them).

[5]. (Neither of Mr. Hazel's jury verdict forms have any valid aggravating elements on them).

[6]. (Neither of Mr. Hazel's jury verdict forms say that Mr. Hazel and Miss. Sheets are *"family or household members"*).

[7]. (Neither of Mr. Hazel's jury verdict forms say that Mr. Hazel was living with Miss. Sheets as a *"person living as a spouse"*).

[8]. (Neither of Mr. Hazel's jury verdict forms say whether Mr. Hazel's and Miss. Sheets had a child in common).

[9]. (Mr. Hazel did not commit aggravated burglary against a *"family or household member"*, in Case No. 03-cr-592).

[10]. (Mr. Hazel did not commit domestic violence against a *"family or household member"*, in Case No. 09-CR-212).

[11]. (Mr. Hazel's domestic violence conviction, in Case No. 09-CR-212, is void).

[12]. (The trial court never had subject matter jurisdiction to convict Mr. Hazel).

**Ground Twelve:** As a direct result of the essential elements of the offense not being included in the 10-CR-828 indictment, the 10-CR-828 indictment is void, and because the 10-CR-828 indictment is void, the Petitioner was denied his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:**

[1]. (There is no specific statutory subsection on Mr. Hazel's 10-CR-828 indictment).

[2]. (Mr. Hazel's 10-CR-828 indictment does not say that Mr. Hazel was living with Miss. Sheets as a *"person living as a spouse"*).

[3.] (Mr. Hazel's 10-CR-828 indictment does not say whether Mr. Hazel and Miss. Sheets had a child in common).

[4]. (Mr. Hazel did not commit aggravated burglary against a *"family or household member"*, in Case No. 03-CR-592).

[5]. (Mr. Hazel did not commit domestic violence against a *"family or household member"*, in Case No. 09-CR-212).

[6]. (Mr. Hazel's domestic violence conviction, in Case No. 09-CR-212, is void).

8

[7]. (The trial court never had subject matter jurisdiction to convict Mr. Hazel).

**Ground Thirteen**: Included in Count One of the 10-CR-808 indictment, Count One of the 10-CR-808 indictment is void, and because Count One of the 10-CR-808 indictment is void, the Petitioner was denied his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:**
[1]. (There is no specific statutory subsection in Count One of Mr. Hazel's 10-CR-808 indictment).
[2]. (Count One of Mr. Hazel's 10-CR-808 indictment does not say that Mr. Hazel was living with Miss. Sheets as a *"person living as a spouse"*).
[3.] (Count One of Mr. Hazel's 10-CR-808 indictment does not say whether Mr. Hazel and Miss. Sheets had a child in common).
[4]. (Mr. Hazel did not commit aggravated burglary against a *"family or household member"*, in Case No. 03-CR-592).
[5]. (Mr. Hazel did not commit domestic violence against a *"family or household member"*, in Case No. 09-CR-212).
[6]. (Mr. Hazel's domestic violence conviction, in Case No. 09-CR-212, is void).
[7]. (The trial court never had subject matter jurisdiction to convict Mr. Hazel).

**Ground Fourteen**: Mr. Hazel's due-process and equal protection rights, under the Fifth and Fourteenth Amendments of the United States Constitution and its Ohio counterparts under Section 16, Article I of the Ohio state constitution have been violated because the prosecution was permitted to respond to Mr. Hazel's A.C. Case Nos. 11-CA-101, 12-CA-22, T.C. Case Nos.10-CR-808 and 10-CR-828 appellant's brief, which has denied Mr. Hazel his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:**
[1]. (The State did not respond to Mr. Hazel's <u>Civ.R.60(B)(5)</u> motion when it was in the trial court).
[2]. (The State did not answer any of Mr. Hazel's <u>Civ.R.33</u> interrogatory questions).
[3]. (Mr. Hazel filed findings of fact and conclusions of law, pursuant to <u>Civ.R.52</u>, pertaining to his <u>Civ.R.60(B)(5)</u> motion).
[4]. (Mr. Hazel filed findings of fact and conclusions of law, pursuant to <u>Civ.R.52</u>, pertaining to his <u>Civ.R.33</u> interrogatory questions).

9

[5]. (The trial court overruled Mr. Hazel's Civ.R.52 motion that pertains to Mr. Hazel's Civ.R.33 interrogatories motion).

[6]. (Mr. Hazel has not yet received an answer to his Civ.R.52 motion, that pertains to his Civ.R.60(B)(5) motion).

[7]. (Mr. Hazel filed a motion for leave to the Second District Appellate Court, for the State of Ohio, for the trial court to rule on ids motion's for findings of fact and conclusions of law, that pertain to his Civ.R.60(B)(5) motion and his Civ.R.33 interrogatories motion).

[8]. (Mr. Hazel has not yet received an answer to his motion for leave, that pertains to his Civ.R.52 motions, that pertain to his Civ.R.60(B)(5) motion and his Civ.R.33 interrogatories motion).

[9]. (Mr. Hazel was never given findings of fact and conclusions of law, in regards to his Civ.R.60(B)(5) motion and his Civ.R.33 interrogatories motion).

[10]. (Mr. Hazel's Civ.R.60(B)(5) motion and his Civ.R.33 interrogatories motion, are not final appealable orders).

**Ground Fifteen**: It was a violation of Mr. Hazel's Fifth and Fourteenth Amendment rights, when the Second District Appellate Court, for the State of Ohio, consolidated Mr. Hazel's post-conviction relief petition with his Civ.R.60(B)(5) motion and his Civ.R.33 interrogatories motion, which has denied Mr. Hazel his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:**
[1]. (The R.C. 2953.21 post-conviction relief petition rules do not apply to a Civ.R.60(B)(5) motion or a Civ.R.33 interrogatories motion).

[2]. (The CivR.60(B)(5) rules and the Civ.R.33 rules do not apply to a R.C. 2953.21 post-conviction relief petition).

[3]. (The R.C. 2953.21 post-conviction relief petition rules, pertain to things that are void and things that are off the record).

[4]. (The Civ.R.60(B)(5) rules that pertain to fraud).

[5]. (The Civ.R.33 interrogatory rules, pertain to questions that must be answered under oath).

[6]. (The Civ.R.60(B)(5) rules and the Civ.R.33 pertain to things that are on the record).

**Ground Sixteen:** Mr. Hazel's Fifth, Sixth and Fourteenth Amendment rights have been violated because the prosecution for the State and the trial court committed fraud against Mr. Hazel, which has denied Mr. Hazel his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

10

**Supporting Facts:**

[1]. (Mr. Hazel has never lived with Miss. Sheets).

[2]. (Mr. Hazel and Miss. Sheets did not have a child in common on November 4th, 2010 and November 5th, 2010).

[3]. (Miss. Sheets did not get pregnant at 119 Dartmouth Dr.).

[4]. (Mr. Hazel has never been Miss. Sheets' spouse).

[5]. (Mr. Hazel has never lived with Miss. Sheets as her spouse).

[6]. (Mr. Hazel and Miss. Sheets were not "family or household members" on November 4th, 2010 and November 5th, 2010).

[7]. (Mr. Hazel has never lived with Ashley Sherrock (Miss. Sherrock), case no. 09-CR-212).

[8]. (Mr. Hazel and Miss. Sherrock do not have any children in common and never have had any children in common, Case No. 09-CR-212).

[9]. (Mr. Hazel has never been Miss. Sherrock's spouse, Case No. 09-CR-212).

[10]. (Mr. Hazel has never lived with Miss. Sherrock as her spouse, Case No. 09-CR-212).

[11]. (Mr. Hazel and Miss. Sherrock were not "family or household members", in Case No. 09-CR-212).

[12]. (Mr. Hazel has never lived with Heather Kunce (Miss. Kunce), Case No. 03-CR-592).

[13]. (Mr. Hazel and Miss. Kunce do not have any children in common and never have had any children in common, Case No. 03-CR-592).

[14]. (Mr. Hazel has never been Miss. Kunce's spouse, Case No. 03-CR-592).

[15]. (Mr. Hazel has never lived with Miss. Kunce as her spouse, Case No. 03-CR-592).

[16]. (Mr. Hazel and Miss. Kunce were not "family or household members", in Case No. 03-CR-592).

[17]. (Miss. Sheets moved to 119 Dartmouth Dr. on September 1st, 2010).

[18]. (Mr. Tillman never seen [sic] Mr. Hazel and Miss. Sheets in a physical altercation).

[19]. (Officer Paul Herald (Mr. Herald), never arrested Mr. Hazel for domestic violence in Case No. 09-CR-212).

**Ground Seventeen:** Mr. Hazel's domestic violence convictions are unconstitutional and therefore have violated his Fifth, Sixth and Fourteenth Amendment rights, which has denied Mr. Hazel his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:**

[1]. (Mr. Hazel and Miss. Sheets have never lived together).

11

[2]. (Mr. Hazel and Miss. Sheets have never lived together as one another's spouse).

[3]. (Mr. Hazel and Miss. Sheets were not "family or household members", on November 4th, 2010, and November 5th, 2010).

[4]. (Mr. Hazel has never been Miss. Sheets' spouse).

[5]. (Mr. Hazel and Miss. Sheets have never cohabitated together).

[6]. (Mr. Hazel and Miss. Sheets did not have any children in common on November 4th, 2010 and November 5th, 2010).

**Ground Eighteen**: Mr. Hazel's Fifth and Fourteenth Amendment rights have been violated because the trial court allowed the State to file a proposed motion for findings of fact and conclusions of law for the trial court; and because the state and the trial courts findings of fact and conclusions of law are fraudulent, which has denied Mr. Hazel of his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts:**
[1]. (The aggravating elements that the State and the trial court are using to enhance Mr. Hazel's felonies, to 3rd degree felonies, are fraudulent).

[2]. (Mr. Hazel's "2009" domestic violence conviction, Case No. 09-CR-212, is a void conviction).

[3]. (Mr. Hazel did not commit aggravated burglary against a *"family or household member"*, Case No. 03-CR-592).

[4]. (In order for the state of Ohio and the trial court to convict Mr. Hazel of 3rd degree felony domestic violence charges, the State must have two valid felony convictions on the record, that were committed against a *"family or household member"*).

[5]. (Mr. Hazel has no felony convictions that were committed against any *"family or household member"* of his).

**Ground Nineteen**: Mr. Hazel has been denied his constitutional rights under the Fifth, Sixth and Fourteenth Amendments, because the State did not answer any of the 25 questions that Mr. Hazel presented to it under oath, in his Civ.R.33 interrogatories motion.

**Supporting Facts:**
[1]. (Mr. Hazel filed a Civ.R.33 interrogatories motion, and asked the State of Ohio to answer the 25 questions under oath, that he had presented to it).

[2]. (The State of Ohio, by and through counsel, did not answer the 25 questions under oath, that Mr. Hazel presented to it).

**Ground Twenty**: Mr. Hazel has been denied his constitutional rights under the Fifth, Sixth and Fourteenth Amendments, because

the certified conflict that Mr. Hazel filed, that pertains to, *State v. McKinley*, Logan App. No.8-05-14, 2006 Ohio 2507, was not addressed properly within the rules of the law.

**Supporting Facts**:

[1]. (The Second Appellate District, for the State of Ohio, did not address whether the decision that it rendered in Mr. Hazel's direct appeal, was in conflict with the Third Appellate District's decision that it rendered in *State v. McKinley*, Logan App. No. 8-05-14, 2006 Ohio 2507).

[2]. (The Second Appellate District, for the State of Ohio, did not address whether the decision that it rendered in Mr. Hazel's direct appeal, is in conflict with the Ohio Supreme Court's decision that it rendered in *State v. McKinley*. Logan App. No. 8-05-14 2006 Ohio 2507).

[3]. (The trial court's decision to accept the jury's guilty verdict against Mr. Hazel, for domestic violence against Miss Sheets, at the end of his trial, is in conflict with the Ohio Supreme Court's decision that it rendered in *State v. McKinley*. Logan App. No. 8-05-14, 2006 Ohio 2507).

**Ground Twenty-One**: Mr. Hazel has been denied his constitutional rights under the Fifth, Sixth and Fourteenth Amendments, because the certified conflict that Mr. Hazel filed, that pertains to, *State v. Pelfrey*, 112 Ohio St. 3d 422, 860 N.E. 2d 735, was not addressed properly within the rules of the law.

**Supporting Facts**:

[1]. (The Second Appellate District, for the State of Ohio, did not properly address whether the decision that it rendered in Mr. Hazel's secondary direct appeal, was in conflict with the Ohio Supreme Court's decision that it rendered in *State v. Pelfrey*, 112 Ohio St. 3d 422,860 N.E. 2d 735).

[2]. (The trial court's decision to accept the jury's guilty verdict against Mr. Hazel, for domestic violence against Miss. Sheets, at the end of his trial, for 3rd degree felonies, is in conflict with the Ohio Supreme Court's decision that it rendered in *State v. Pelfrey*, 112 Ohio St. 3d 422,860 N. E 2d 735).

**Ground Twenty-Two**: Mr. Hazel has been denied his constitutional rights under the Fifth, Sixth and Fourteenth Amendments, because the certified conflict that Mr. Hazel filed, that pertains to, *State v. Williams*, 79 Ohio St. 3d 459, 1997 Ohio 79, 683 N.E. 2d 1126, 1997 Ohio Lexis 2423 and *State v. Carswell*,114 Ohio St. 3d 210, 2007 Ohio 3723, 871 N.E. 2d 547,

2007 Ohio Lexis 1654, was not addressed properly within the rules
of the law.

**Supporting Facts**:
[1]. (The Second Appellate District, for the State of Ohio, did not
properly address whether the decision that it rendered in Mr.
Hazel's secondary direct appeal, was in conflict with the Ohio
Supreme Court's decision that it rendered in *State v. Williams*, 79
Ohio St. 3d 459, 1997 Ohio 79, 683 N.E. 2d 1126, 1997 Ohio
Lexis 2423 and *State v. Carswell*, 114 Ohio St. 3d 210, 2007 Ohio
3723, 871 N.E. 2d 547, 2007 Ohio Lexis 1654.
[2]. (The trial court's decision to accept the jury's guilty verdict
against Mr. Hazel, for domestic violence against Miss. Sheets, at
the end of his trial, is in conflict with the Ohio Supreme Court's
decision that it rendered in *State v. Williams*, 79 Ohio St. 3d 459,
1997 Ohio 79, 683 N.E. 2d 1126, 1997 Ohio Lexis 2423 and *State
v. Carswell*, 114 Ohio St. 3d 210, 2007 Ohio 3723, 871 N.E. 2d
547, 2007 Ohio Lexis 1654.

(Amended Petition, Doc. No. 5, PageID 52-62.)

## Procedural History

Michael Hazel was indicted by the Clark County Grand Jury in Case No. 10-CR-808 for

events allegedly occurring November 5, 2010, for one count of domestic violence with a

knowledge-of-pregnancy specification, one count of abduction, one count of felonious assault

with a deadly weapon, to wit, a knife and a hammer, and one count of kidnapping.  In Case No.

10-CR-827 he was indicted for one count of domestic violence with a knowledge-of-pregnancy

specification for events allegedly occurring on September 14, 2010.  In Case No. 10-CR-828

Hazel was indicted on one count of domestic violence with a knowledge-of-pregnancy

specification for events allegedly occurring on November 4, 2010.  In Case No. 11-CR-049

Hazel was reindicted on three counts of felonious assault for the events of November 5, 2010.

Eventually all cases were consolidated and the counts renumbered.  At trial a jury found Hazel

not guilty on the domestic violence charge in Count One but guilty on Counts Two and Three of domestic violence and further found that Hazel had previously been convicted of domestic violence and aggravated burglary and that he knew Monica Sheets was pregnant at the time of the offenses. The trial court sentenced Hazel to two consecutive terms of five years each on the domestic violence counts.

Hazel appealed to the Second District Court of Appeals which affirmed the conviction. *State v. Hazel*, 2012 Ohio 835, 2012 Ohio App. LEXIS 727 (2nd Dist. March 2, 2012).  Hazel's motion for reconsideration was denied and the Ohio Supreme Court declined to exercise jurisdiction over a discretionary appeal as well as a delayed appeal.  Hazel then moved to reopen his direct appeal under Ohio R. App. P. 26(B), but the court of appeals denied the motion and the Ohio Supreme Court dismissed an appeal from that decision.

In the meantime Hazel had filed a petition to vacate the conviction which the trial court overruled on November 30, 2011. On appeal the Second District ordered a remand for findings of fact and conclusions of law. The trial judge adopted proposed findings of fact and conclusions of law prepared by the prosecutor and dismissed the petition to vacate. Hazel's motion to have the findings stricken was overruled by the court of appeals.

On February 27, 2012, Hazel filed a second motion to vacate a void judgment in the trial court relying for authority on Ohio R. Civ. P. 60(B)(5) and Ohio R. Crim. P. 52(B) and on March 22, 2012, he filed a motion for leave to file Civil Rule 33 interrogatories.  Both the motion to vacate and the motion for interrogatories were overruled.  After consolidating the appeals, the Second District affirmed.  *State v. Hazel,* 2013 Ohio 118, 2013 Ohio App. LEXIS 80 (2nd Dist. Jan. 18, 2013).  The court of appeals overruled motions for reconsideration and to certify conflict and the Ohio Supreme Court declined to exercise jurisdiction.  The instant habeas corpus petition

followed.

# Generally Applicable Law

Because the Petition contains twenty-two separate Grounds for Relief with many subclaims, it is useful to set out here law which, in the Magistrate Judge's opinion, is applicable to many of the claims.

## Only Constitutional Claims

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13, 178 L. Ed. 2d 276 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983).  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

> State law issues are not subject to habeas review, see *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991), and this Court can review the denial of Pudelski's motion for new trial only for constitutional error. To establish a constitutional due process claim, Pudelski must demonstrate that the trial court's denial of his motion for new trial was "so egregious" that it violated his right to a fundamentally fair trial. *See Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009); *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004*).

*Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir. 2009)(Holschuh, D.J.)

**Procedural Default**

The procedural default defense in habeas corpus, which is relied on by the Warden here, is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

"A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits

because of a petitioner's failure to comply with a state procedural rule. *Id.* Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id.*

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright*. *Murray*, 477 U.S. at 485; *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985).  Failure to present an issue to the state supreme court on discretionary review constitutes procedural default.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted).  "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), *citing Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 846-7(1999)); *see also Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]"). The corollary to this rule is that where a petitioner raised a claim in the state court but in violation of a state's procedural rule, a state court must expressly reject the claim on that procedural ground for a federal court to deem the claim defaulted. *See Williams*, 460 F.3d at 806 (noting that a state court's expressed rejection of a petitioner's claim on procedural basis and petitioner's complete failure to raise a claim in state court are the two ways a claim can be in procedural default).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir.

2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

**Ineffective Assistance of Counsel**

A number of Hazel's Grounds for Relief raise claims of ineffective assistance of trial counsel or ineffective assistance of appellate counsel. The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so

defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  *See generally* Annotation, 26 ALR Fed 218.

# Analysis

**Ground One:  Refusal to Dismiss Domestic Violence Charges**

In his First Ground for Relief, Hazel asserts the trial court denied him his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments when it denied his motion to dismiss all counts of domestic violence (Amended Petition, Doc. No. 5, PageID 38).  The Warden concedes this claim is preserved for merits determination, construed as a claim that there was insufficient evidence to support a conviction for domestic violence. (Return of Writ, Doc. No. 10, PageID 2378.)  Hazel's Traverse agrees that this is the claim he is raising (Traverse, Doc. No. 23, PageID 2630 et seq.).

Hazel raised this claim as his First Assignment of Error on Direct Appeal and the Second District Court of Appeals decided it as follows:

> **[*P13]** Hazel's first assignment of error states:
>
> THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND ABUSED ITS DISCRETION BY DENYING DEFENSE MOTION TO DISMISS ALL COUNTS OF DOMESTIC VIOLENCE.
>
> **[*P14]** Hazel argues that the counts of domestic violence should have been dismissed, because the State "failed to present a prima facie case that the * * * parties were cohabitating" or otherwise satisfied the definition of "family or household member" for purposes of the domestic violence statute, R.C. 2919.25. Hazel's Crim.R. 29 motion to dismiss the charges of domestic violence was overruled at trial.

21

[*P15] R.C. 2919.25 provides, in pertinent part:

(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

* * *

(F)(1) "Family or household member" means any of the following:

a) Any of the following who is residing or has resided with the offender: (i) A spouse, a person living as a spouse, or a former spouse of the offender;* * *

(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

[*P16] "[T]he essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium. R.C. 2919.25(E)(2) and related statutes. Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact " *State v. Williams*, 79 Ohio St.3d 459, 465, 1997 Ohio 79, 683 N.E.2d 1126 (1997).

[*P17] The State contends that the evidence established two bases for concluding that Hazel and Sheets were family or household members: they were persons living as spouses and Sheets was pregnant with Hazel's child.

[*P18] Sheets's testimony at trial was somewhat inconsistent as to her living arrangements. On cross-examination by the State, Sheets stated that she had been in a romantic relationship with Hazel since January 2010 and that he had "never lived there" (with her), but had "stayed the night." She also stated, however, that one of their

22

fights had occurred when he "didn't come home the night before," which caused Sheets to accuse Hazel of cheating on her. At another point in her testimony, Sheets stated that all or most of Hazel's clothing was at her house and that he stayed there "most nights." On cross-examination by the defense, Sheets testified that Hazel stayed with her "every now and then" but "didn't live there per se."

[*P19] In addition to Sheets's testimony, one of the sheriffs deputies who responded to Sheets's home on November 5, 2010, testified that he observed "male clothing" in an "adult bedroom" of the house. Another deputy testified that Sheets referred to Hazel as her "live-in boyfriend."

[*P20] Considering all of the evidence presented, the jury could have reasonably concluded that Hazel lived with Sheets and thus was a family or household member for purposes of the domestic violence statute.

[*P21] The State also argues that Hazel was Sheets' "family or household member" by virtue of the fact that she was pregnant with his child. We need not address whether a woman's pregnancy makes a couple the "natural parent[s] of any child" prior to the child's birth for purposes of this statute, because there was sufficient evidence from which the jury could have concluded that Hazel and Sheets were family or household members by virtue of their living arrangements, as discussed above.

[*P22] The first assignment of error is overruled.

*State v. Hazel, supra.*

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

23

> could have found the essential elements of the crime beyond a
> reasonable doubt . . . .  This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable
> inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132,

110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to
> groups who might view facts differently than we would. First, as in
> all sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable
> doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781,
> 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the
> evidence, re-evaluate the credibility of witnesses, or substitute our
> judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d
> 618, 620 (6th Cir. 1993). Thus, even though we might have not
> voted to convict a defendant had we participated in jury
> deliberations, we must uphold the jury verdict if any rational trier
> of fact could have found the defendant guilty after resolving all
> disputes in favor of the prosecution. Second, even were we to
> conclude that a rational trier of fact could not have found a
> petitioner guilty beyond a reasonable doubt, on habeas review, we
> must still defer to the state appellate court's sufficiency
> determination as long as it is not unreasonable. See 28 U.S.C. §
> 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas

corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062 (2012)(*per curiam).*

The State argued two bases for finding that Sheets and Hazel were family or household members, to wit, that they were living together and/or that Sheets was pregnant with Hazel's child.  Hazels' First Ground for Relief contains essentially two claims (1) that the fact of Sheet's pregnancy with his child cannot constitutionally count to prove domestic violence and (2) that the Second District was objectively unreasonable in finding there was sufficient evidence they lived together (Traverse, Doc. No. 23, PageID 2630-35).

**The Pregnancy Subclaim**

Hazel does not deny that, on the dates in question, Sheets was carrying a viable fetus that

he had fathered; their child was later born on November 18, 2010, less than two weeks after Hazel's last assault on her.  The Second District declined to decide whether the unborn but viable fetus constituted a child for purposes of the domestic violence statute.  Instead, it held there was sufficient evidence from which the jury could have concluded Sheets and Hazel were living together.  *State v. Hazel, supra.*

On appeal Hazel had reiterated the argument made on his oral Rule 29 motion, to wit, "that he could not be the putative father of the Minor Child because said child was unborn and did not, therefore, legally exist."  (Appellant's Brief, Doc. No. 9-1, PageID 405-406, citing *State v. Williams*, 79 Ohio St. 3d 459 (1997)).  Hazel extended this argument by claiming:

> The fact that she was pregnant at the time was not controlling as an "unborn child" was not denominated in the statute, O.R.C. 2919.25 (F) (1) (b) and it could have been had the legislators so intended. As this Court knows, all ambiguities in a statute are to be construed against the State and in favor of the Defendant.

*Id.* at PageID 407.

In his Traverse, Hazel extends the argument even further:

> [T]he trial court's decision to overrule Mr. Hazel's Crim. R. 29 motion regarding whether or not Mr. Hazel was Miss Sheets family or household member, with regards to her unborn child, and then letting the jury deliberate on this issue, clearly, in this aspect, the trial court unreasonably extended a legal principle from a Supreme Court precedent to a new context where it should not have been applied, pursuant to *Roe v. Wade* (1973), 410 U.S. 113, 154, 94 S. Ct. 705.

(Traverse, Doc. No. 23, PageID 2634).

This statutory argument is unpersuasive.  *State v. Williams, supra*, says nothing about the definition of child in Ohio Revised Code § 2919.25(F)(1)(b).  The trial judge in overruling the Rule 29 motion referred to *State v. Lopp*, 2010-Ohio-1432, 2010 Ohio App. LEXIS 1199 (8th Dist. 2010), where the Eighth District held that Lopp was "clearly the 'putative other natural

parent'" where it was not disputed that the victim was thirty-nine weeks pregnant with the defendant's unborn child. Id. at ¶ 13 n.2.

The constitutional argument is also unpersuasive. *Roe v. Wade, supra,* recognized a constitutional woman's right to an abortion under certain circumstances. In the rhetoric of its supporters, it is about a woman's right to choose whether or not to bear a child. Nothing in *Roe* or any of its progeny suggests the State cannot protect that right by criminalizing assault on a pregnant woman by the man who impregnated her. As the facts in *Lopp* show, women who refused to abort are at risk of assault by the men who impregnated them and do not want to pay child support. Finally, the constitutional claim is also procedurally defaulted because it was never presented to the state courts.

**The "Family or Other Household Member" Subclaim**

Hazel also argues there was insufficient evidence to prove he was a "family or household member" with respect to Miss Sheets. He argues Sheets had "made it very very clear to the 911 dispatcher, the grand jury, and the trial jury that Mr. Hazel has never lived with her." (Traverse, Doc. No. 23, PageID 2633.) By the time of trial, Sheets, who by then had borne Hazel's baby, was a reluctant witness and had to be called as a court's witness. Even given her reluctance, she admitted Hazel stayed at her house "most nights" and they had fought over Sheets' accusation that Hazel was cheating on her because he did not come home the night before. The testimony of one sheriff's deputy to the presence of male clothing in Sheets' home (which she described at trial as "all or most of his clothing") was unrebutted. Also unrebutted was another deputy's testimony that Sheets had referred to Hazel as her "live-in" boyfriend.

That evidence is plainly sufficient to support a conviction.  The Second District's conclusion to that effect is not an objectively unreasonable application of *Jackson v. Virginia*, *supra*.  The First Ground for Relief should therefore be dismissed with prejudice.

**Ground Two:  Trial Court's Evidentiary Rulings, Cumulatively, Denied a Fair Trial**

In his Second Ground for Relief, Hazel contends that the accumulated errors in evidentiary rulings by the trial judge denied him a fair trial.

The Warden argues this claim is not cognizable in habeas corpus because admission or exclusion of evidence is a matter of state, not federal constitutional law  (Return of Writ, Doc. No. 10, PageID 2355-56).  Although Hazel writes at length in response to the Warden's other assertions of non-cognizability, he makes no such response as to Ground Two (Traverse, Doc. No. 23, PageID 2604-13).

Evidentiary questions generally do not rise to the constitutional level unless the error was so prejudicial as to deprive a defendant of a fair trial.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988);  *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983);  *Bell v. Arn,* 536 F.2d 123 (6th Cir., 1976); *Burks v. Egeler*, 512 F.2d 221, 223 (6th Cir. 1975). Where an evidentiary error is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief. *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007); *Bugh v. Mitchell,* 329 F.3d 496 (6th Cir. 2003), *citing Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2000).  Courts have, however, defined the category of infractions that violate fundamental fairness very narrowly.  *Bugh, supra, quoting Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)(*quoting Dowling v. United States*, 493 U.S. 342, 352 (1990)).

28

The purported supporting facts under Ground Two do not speak of evidentiary rulings. Instead, Hazel claims racial bias in jury selection, lack of prior conviction of domestic violence, and judicial bias.

The Warden asserts that Ground Two is procedurally defaulted in several ways. First, he says, to the extent it is a cumulative error claim, it was not pursued in the Ohio Supreme Court (Return of Writ, Doc. No. 10, PageID 2366-67). Hazel admits that he did not pursue it on appeal to the Ohio Supreme Court, because "when Mr. Hazel's direct appeal was overruled by the second district, Mr. Hazel was absolutely clueless as to how he would argue about cumulative errors, when he did not fully understand what they were." (Traverse, Doc. No. 23, PageID 2613.) This obviously does not excuse abandoning the claim, since all Hazel had to do was repeat the argument his appellate counsel made.

The claim of cumulative trial court error was combined with a claim of prosecutorial misconduct in Hazel's Second Assignment of Error on direct appeal. The Second District decided it was not error to call Monica Sheets as a court witness given her changes of statement between the time of the offense and trial. *State v. Hazel, supra,* ¶¶31-38. Next the appellate court determined it was error to permit firefighter Michael Myers to testify about Sheets' statements to him under the medical treatment exception to the hearsay rule. *Id.* at ¶¶ 39-47. The court further found the error was harmless and it could not be appropriately cumulated with other harmless error under Ohio law because Hazel had "not identified multiple instances of harmless error." *Id.* at ¶¶ 48-50.

Not only are evidentiary questions not ordinarily reviewable in habeas corpus, but cumulative error also does not state a claim for habeas corpus relief. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011), *cert. denied,* ___ U.S. ___, 132 S.Ct. 2751 (2011), *citing Moore v.*

*Parker,* 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied sub nom. Moore v. Simpson,* 549 U.S. 1027 (2006); *Hoffner v. Bradshaw,* 622 F.3d 487, 513 (6th Cir. 2010); *Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012), *cert. denied sub nom. Moreland v. Robinson*, 134 S. Ct. 110 (2013).

In his supporting facts for Ground Two, Hazel claims he had a racially biased jury.  The Warden asserts this sub-claim is procedurally defaulted because it  was never raised in the state courts (Return of Writ, Doc. No. 10, PageID 2366-67).  Hazel claims he asked his appellate attorney, J.Allen Wilmes, to raise the claim but he refused (Traverse, Doc. No. 23, PageID 2613-14).  Hazel asserts he raised this claim briefly as an instance on ineffective assistance of appellate counsel in his Ohio App. R. 26(B) application. *Id.*

Claims of racial bias in the selection of a jury venire or in the exercise of peremptory challenges by the State are cognizable under the Fourteenth Amendment.  However, they are procedurally defaulted and thereby forfeited if they are not raised in the trial court.  Hazel offers no proof that any such claim was ever made in the trial court and the claim is therefore procedurally defaulted.

Ground Two for Relief should be dismissed with prejudice.

**Ground Three:  Prosecutorial Misconduct**

In his Third Ground for Relief, Hazel asserts he was denied a fair trial when the prosecutor presented evidence of alleged charges she knew would not support a conviction.  This claim was raised as the Third Assignment of Error on direct appeal and decided by the Second District as follows:

**[\*P51]** Hazel's third assignment of error states:

APPELLANT WAS DENIED DUE PROCESS BY PROSECUTORIAL MISCONDUCT IN PRESENTING EVIDENCE OF ALLEGED CHARGES THAT SHE KNEW WOULD NOT SUPPORT A CONVICTION.

**[\*P52]** Hazel contends that the State filed some of the charges against him — felonious assault, abduction, and kidnapping — knowing that it could not convict him of those offenses, with the purpose to "incite" the jury against him and make the jury believe that he "had already 'caught a break' by the dismissal" of those charges when it deliberated on the charges of domestic violence. The State responds that it could not have known before trial whether these charges could not be proven, because it did not know what the content of Sheets's testimony would be.

**[\*P53]** The standard of review for grand jury indictments is far less stringent than the beyond a reasonable doubt burden on criminal trial prosecutions; the potential for inordinate delay or for abuse by overzealous counsel militates against stricter review of these proceedings. *State v. Marich*, 6th Dist. Erie No. E-85-53, 1986 Ohio App. LEXIS 9316, 1986 WL 14816 (Dec. 19, 1986), citing *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397, 1956-1 C.B. 639 (1956). Furthermore, because of the secrecy with which grand jury proceedings are shrouded, it is impossible for this court to stringently review the sufficiency of the indictment. *Id.*

**[\*P54]** There was some evidence offered at trial in support of the charges for felonious assault, abduction, and kidnapping related to the events of November 5, 2010. For example, the count of felonious assault alleged that Hazel had attempted to cause physical harm to Sheets by means of a deadly weapon (a knife or hammer). Deputies did testify that a knife was found in Hazel's waistband when they arrested him, that they observed two hammers in the room where the couple had been having an altercation, and that the deputies later came to believe that "those hammers had some evidentiary value."

**[\*P55]** With respect to abduction and kidnapping, Sheets testified that, on November 5, 2010, she called 911 from the bathroom, that she was blocking the door, and that Hazel was trying to break into the bathroom. At various times, she gave differing accounts of why he was trying to break into the bathroom. The deputies who

responded to the house found the bathroom door broken off its hinges. They also observed Hazel "fighting" and "tussling" with Sheets in the doorway to the bathroom, while he was standing and she was on the floor. Based on this evidence and Sheets's initial account of the events, the State could have reasonably believed that Sheets had been cornered by Hazel in the bathroom by force or threat of force for some period of time and had been unable to escape. Such conduct would have supported the counts of abduction and kidnapping, especially if Sheets had testified, consistent with her statements to deputies at the time of the incident, that Hazel refused to let her leave the house and threatened her.

**[\*P56]** After the court dismissed the counts of felonious assault, abduction, and kidnapping, the prosecutor explained to the jury in closing argument that the evidence had "not established" those charges and that they would not be addressed further. The trial court did not explain the dismissal of those charges to the jury, nor did it instruct the jury that these counts in the indictment could not be considered for any purpose. Hazel did not ask the court to provide any explanation or limiting instruction to the jury.

**[\*P57]** Hazel's suggestion that the jury viewed the dismissal of some counts as a windfall for him and held it against him in its deliberations of the domestic violence charges is speculative and unsupported by the record. We cannot conclude that Hazel was prejudiced by the dismissal of some counts in the indictment.

**[\*P58]** The third assignment of error is overruled.

*State v. Hazel, supra.*

The Warden asserts this Ground for Relief is procedurally defaulted because Hazel did not include it in his direct appeal to the Ohio Supreme Court (Return of Writ, Doc. No. 10, PageID 2367-68). Hazel admits he failed to raise the claim on direct appeal, but asks the Court to excuse the default because he has come forward with new evidence of actual innocence of the element of a prior conviction of aggravated burglary of a family or household member in Case No. 03-CR-592 (Traverse, Doc. No. 23, PageID 2618). The actual innocence claim is dealt with infra.

**Ground Four:  Ineffective Assistance of Appellate Counsel**

In Ground Four Hazel claims his appellate attorney, J. Allen Wilmes, provided him with constitutionally ineffective assistance of counsel on direct appeal for not raising the following claims:

2.[2]     Bar to Hazel's conviction of third-degree felonies

3.     Insufficiency of the indictments in 10-CR-828 and count one of 10-CR-808

4.     Lack of proof that the aggravated burglary in Case No. 03-CR-592 was against a family or household member

5.     Noncompliance of the verdict forms with Ohio Revised Code § 2945.75(a)(2).

6.     Insufficiency of the complaint

7.     Ineffective assistance of trial counsel James Marshall

8.     Perjured testimony of David Wilson, Bradley Tillman, and Paul Herald

9.     Incomplete and "fraudulent" jury instructions

10.     Lack of proof the domestic violence conviction in Case No. 09-CR-212 was against a family of household member.

The Warden asserts that subclaims 2, 4, 6, 8, and 10 are procedurally defaulted because they were never presented to the Ohio courts (Return of Writ, Doc. No. 10, PageID 2368-69. Hazel responds that these supposedly omitted subclaims are "intertwined together and stem from one argument" and directs the Court's attention to his Rule 26(B) Application and its attachments (Traverse, Doc. No. 23, PageID 2619-20).

In his Application to Reopen, Hazel argued Wilmes was ineffective for not arguing that

---

[2] These claims are numbered to match their numbering in the Supporting Facts for Ground Four and are properly treated as subclaims.

Marshall was ineffective for failing to raise the insufficiency of the indictments in cases 828 and 808 because they did not specify the statutory subsection allegedly violated (Doc. No. 9-2, PageID 658).  He claims Marshall should have objected to the trial judge's refusal to allow the jury to see Deputy Tillman's prior inconsistent statement.  *Id.*  at 659.  He asserts Marshall should have objected to the trial judge's failure to instruct on a specific subsection of the domestic violence law and that the trial judge's instruction on how the jury was to consider Sheets' grand jury testimony was "fraudulent" because of Sheets' invocation of her privilege against self-incrimination.  *Id.*

Hazel further claimed Wilmes was ineffective for (1) not raising the omission of specific statutory subsections in the 808 and 828 indictments; (2) not objecting to the form of the verdicts; (3) not objecting to the withholding by the trial court of admissible exculpatory evidence, to wit, Tillman's written statement; and (4) not objecting to the incomplete and "fraudulent" jury instructions *Id.*  Hazel himself characterized the 26(B) Application as raising five issues (Affidavit, Doc. No. 9-2, PageID 667).

The Second District Court of Appeals considered Hazels' claims of ineffective assistance of appellate counsel on the merits.  *State v. Hazel*, Case No. 2011 CA 16 (2nd Dist. June 27, 2012)(unreported, copy at Doc. 9-2, PageID 886 et seq.)  This Court has difficulty seeing where Hazel raised subclaims 2, 4, 6, 8 (except for the Tillman testimony), and 10.  To the extent they were not raised, they are procedurally defaulted by Hazel's failure to present them.  But if, on the other hand, we accept Hazel's argument that the claims are all "intertwined," then to prevail on his Fourth Ground for Relief he must show that the Second District's decision was an objectively unreasonable application of clearly established Supreme Court precedent.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at

trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). The same test applied to trial counsel in *Strickland, supra*, applies on appeal. Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., *citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.") Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); *see Smith v. Murray*, 477 U.S. 527 (1986). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua,* 341 F.3d at 441; *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those

errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000), *citing Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland*, 356 F.3d at 699, *citing Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)(*citing Strickland*). "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir, 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). Appellate counsel is not ineffective for failure to predict the development of the law. *Thompson v. Warden*, 598 F.3d 281, 288 (6th Cir. 2010), *citing Lott v. Coyle,* 261 F.3d 594, 609 (6th Cir. 2001)(not ineffective assistance of appellate counsel to fail to anticipate *State v. Foster* in an appellate district which had ruled the other way); *accord, Carter v. Timmerman-Cooper*, 2010 U.S. App. LEXIS 10549 (6th Cir. 2010).

Hazel has failed to demonstrate how the Second District's decision on his ineffective assistance of appellate counsel claims is an objectively unreasonable application of *Strickland*. That court recognized that *Strickland* applied. *State v. Hazel, supra,* at Doc. No. 9-2, PageID 886. It found the indictments were not void for omission of a subsection citation. *Id.* at PageID 887. It found no prejudice from Marshall's advice to take a plea offer because Hazel did not take it. *Id.* The Tillman statement was found to have been sufficiently explored on cross-examination. *Id.* The jury instructions were found to be error-free. *Id.* at PageID 887-88. The verdict forms were not erroneous. *Id.* at PageID 888.

Hazel asserts the Second District's rejection of his ineffective assistance of appellate counsel claims was an unreasonable application of *Murray v. Carrier,* 477 U.S. 478 (1986); *Mesarosh v. United States*, 352 U.S. 1 (1956); *United States v. Norris,* 300 U.S. 564 (1937); *Galt v. Galloway*, 29 U.S. 332 (1830); and *Vasquez v. Hillery*, 474 U.S. 254 (1986). To take these cases in historical order, *Galt* is a civil case to quiet title to land and thus has no bearing here.  In *Norris* the Supreme Court upheld a conviction for perjury even though the witness recanted his false testimony; no issue of ineffective assistance of appellate counsel was presented.  *Mesarosh* involved a remand for new trial when the Government advised the court that one of its witnesses had testified falsely.  *Vasquez* involved racial discrimination in selection of a grand jury; no claim of ineffective assistance of appellate counsel was involved.  *Murray v. Carrier, supra,* holds that attorney error short of ineffective assistance of appellate counsel does not constitute cause to excuse a procedural default; it does not adopt any standard for finding ineffective assistance of appellate counsel which was ignored here by the Second District.

Hazels' Fourth Ground for Relief should be dismissed.


**Ground Five:  Ineffective Assistance of Trial Counsel**


In his Fifth Ground for Relief, Hazel asserts his trial attorney, James Marshall, provided ineffective assistance of trial counsel in the following ways:

1.     Failure to file a pretrial motion under Ohio R. Crim. P. 12(C)

2.     Failure to object to the all-white petit jury

3.     Failure to object to a jury biased by the presence of friends of Marshall, the Clark County Prosecutor's and Sheriff's Offices and of the judge

4.      Allowing Hazel to be convicted of third-degree felonies

5.      Failure to file objections to the verdicts' not complying with Ohio Revised Code §
2945.75(a)(2)

6.      Failure to object to the non-compliance of the verdict forms with Ohio R. Crim. P. 31(A)

7.      Failure to raise claim that Wilson, Tillman, and Herald perjured themselves before the
grand jury

8.      Failure to object to perjured trial testimony by Wilson, Tillman, and Herald

9.      Failure to claim *Brady* violations during the trial.

The Warden contends Ground Five is procedurally defaulted in its entirety (Return of
Writ, Doc. No. 10, PageID 2369-71).  The Warden's argument is that none of these claims was
presented as an ineffective assistance of trial counsel claim to the Ohio courts, either on direct
appeal to the extent they could have been raised based on the direct appeal record, or by petition
for post-conviction relief under Ohio Revised Code § 2953.21 to the extent they depend on
evidence outside the record.

Hazel responds that at least some of these claims were raised by including them in his
26(B) Application.  In that he is incorrect.  A criminal defendant does not fairly present an
ineffective assistance of trial counsel claim to the Ohio courts by including it as an underlying
claim to a claim of ineffective assistance of appellate counsel.  *Davie v. Mitchell*, 547 F.3d 297,
312 (6th Cir. 2008); *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *Roberts v. Carter*, 337
F. 3d 609, 615 (6th Cir. 2003).

For those subclaims not raised as part of the underlying ineffective assistance of trial
counsel claim in the 26(B) application, makes no response to show they were fairly presented
elsewhere.  Instead, he claims his showing of actual innocence regarding the aggravated burglary

38

conviction in Case No. 03-CR-592 excuses any procedural default.  The actual innocence claim is dealt with *infra*.

Because Ground Five is procedurally defaulted, it should be dismissed with prejudice.

**Ground Six:  Defective Indictments**

In his Sixth Ground for Relief, Hazel contends that the 10-CR-828 indictment and Count One of the 10-CR-808 indictment are void because they do not include the specific subsections under which he was charged.  The Warden asserts this claim is procedurally defaulted because it could have been but was not raised on direct appeal.  Nor is the default excused by ineffective assistance of appellate counsel because the Second District in deciding Hazel's 26(B) Application found the indictments were not void.

Hazel responds that the Second District's decision on this point is an unreasonable application of clearly established Supreme Court precedent, citing *United States v. Williams*, 504 U.S. 36 (1992), and *United States v. Calandra*, 414 U.S. 338 (1974).  *Williams* has no bearing on the form of indictment, but instead refused to adopt a rule that would have required a federal prosecutor to submit substantial exculpatory evidence to the grand jury.  In *Calandra* the Supreme Court reversed a Sixth Circuit decision which would have permitted a grand jury witness to invoke the exclusionary rule under the Fourth Amendment.  Neither case has any applicability to state court proceedings, because state use of the grand jury is not required by the federal Constitution.  *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975).

Ground Six is procedurally defaulted and in any event is without merit and should be

dismissed with prejudice.


**Ground Seven:  Improper Verdict Forms**


In his Seventh Ground for Relief, Hazel claims the verdict forms in his case are improper and therefore his convictions are void.

The Warden asserts this claim is barred by Hazel's procedural default in failing to raise it on direct appeal (Return of Writ, Doc. No. 10, PageID 2372-73).  Hazel admits the claims were not raised on direct appeal and relies on his assertion that Mr. Wilmes provided ineffective assistance of appellate counsel which is dealt with above under Ground Four.


**Actual Innocence Claim**


Hazel also asserts that any procedural default is excused by his actual innocence and relies on Exhibits 147-181 attached to Doc. No. 16 and Exhibits 182-83 attached to the Traverse (Doc. No. 23).  The Court previously granted Hazel's Motion to add the documents attached to Doc. No. 16 to the record "without prejudice to any argument the Warden may have that reliance on these documents is barred by *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011)."(Order, Doc. No. 22, PageID 2580.)  Under *Pinholster*, a habeas corpus court is limited to the state court record in deciding whether the decision(s) of the state courts are contrary to or an objectively unreasonable application of Supreme Court precedent.  *Pinholster* does not prevent the Court from considering newly-tendered evidence on a claim of actual innocence. *Jackson v. Warden,* 2014 U.S. Dist. LEXIS 110700 (S.D. Ohio Aug. 11, 2014).

40

Exhibits 147 to 152 are Clark County Municipal Court documents relating to aggravated burglary, domestic violence, and witness intimidation charges filed against Hazel in 2003 with Heather Kunce as the victim.  They include at Exhibit 150 a Statement of Probable Cause by Kunce to the effect that Hazel, the father of her daughter, cut her with an ashtray which he broke on her chest (Doc. No. 16, PageID 2438).

Exhibits 153 to 161 are Clark County Common Pleas Court documents relating to Case No. 03-CR-0592 which show that the Municipal Court case reflected in the prior exhibits went forward to the Common Pleas Court where Hazel was indicted on the same three charges.  As a result of a plea agreement, he was permitted to plead guilty to the aggravated burglary charge with the other two charges being dismissed.

It is unclear what Exhibit 162 is intended to show.

Exhibits 163 relates to State v. Hazel, Clark County Common Pleas Court Case No. 09-CR-212 in which Hazel was charged with abduction, robbery, and domestic violence and pled guilty to domestic violence with an agreed sentence of eight months.

Exhibit 164 is the transcribed December 6, 2010, grand jury testimony of Monica Sheets in the case underlying this habeas corpus case.  She testified that Hazel was the father of her two-week old son and he was staying with her off and on.

Exhibit 165 is the Common Pleas docket sheet in this case which includes transcriptions of the jury verdicts.  Exhibit 166 is the Ohio Department of Rehabilitation and Corrections calculation of sentence for the 2003 aggravated burglary case.  Exhibit 167 is a notice from Hazel to Wilmes about issues to be raised on appeal in this case.  Exhibit 168 is a purported Notice of Legal Instruction from Hazel to the Clark County Clerk of Courts in this case.  Exhibits 169-181 are additional filings in the Common Pleas or appellate cases, mostly what

41

Hazel captions as "Notice of Legal Instruction."

Exhibit 182 is a February 16, 2012, Show Cause Order to Hazel in his appeal from denial of his petition for post-conviction relief (Attachment to Reply, Doc. No. 23.).  Exhibit 183 is an Order of the Domestic Relations Division of the Common Pleas Court of Clark County in Heather Kunce v. Earnest Foster IV, Case No. 2004 JV 0656 in which the court found Foster was the father of Malaysia Kunce, born to Heather Kunce on October 29, 2002, both by his admission in open court and by genetic testing.

Hazel argues that "had this evidence been presented at Mr. Hazel's trial, there is a very reasonable probability that Mr. Hazel's trial would have ended with a very different outcome" because this "is new and reliable evidence of Mr. Hazel's actual innocence, that Mr. Hazel never committed aggravated burglary against a family or household member in Case No. 03-CR-592." (Traverse, Doc. No. 23, PageID 2626.)

The Supreme Court most recently discussed the actual innocence doctrine in *McQuiggin v. Perkins*, 569 U.S. ___, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013):

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U.S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.
>
> * * *

> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

133 S. Ct. at 1928, 185 L. Ed. 2d at 1027.

A claim of actual innocence alone is insufficient to warrant habeas relief. *Herrera v. Collins*, 506 U.S. 390 (1993).

> Case law in the Sixth Circuit establishes that the Supreme Court of the United States has never recognized a free-standing or substantive actual innocence claim. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007), *citing Zuern v. Tate*, 336 F.3d 478, 482, n.1 (6th Cir. 2003), and *Staley v. Jones*, 239 F.3d 769, 780, n.12 (6th Cir. 2001). The Supreme Court has twice suggested that a "truly persuasive demonstration" of actual innocence would render a petitioner's execution unconstitutional. *Herrera v Collins,* 506 U.S. 390, 417 (1993); *House v. Bell*, 547 U.S. 518 (2006).

*Raymond v. Sheets*, 2012 U.S. Dist. LEXIS 160374, *26-27 (S.D. Ohio Nov. 8, 2012).  Rather, proven actual innocence creates a gateway to excuse procedural default in presenting some other constitutional claim.

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims."  *Schlup v. Delo*, 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled

> however, that the actual innocence exception should "remain rare"
> and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

Hazel was convicted of domestic violence as a third-degree felony. To properly convict Hazel of that offense, the State had to prove that he "previously had pleaded guilty to or been convicted of two or more offenses of domestic violence or two or more violations or offenses of the type described in division (D)(3) of this section involving a person who was a family or household member at the time of the violations or offenses . . . ." Ohio Revised Code § 2919.25(D)(4). The offenses described in Ohio Revised Code § 2929.25(D)(3) include aggravated burglary. The State's theory of the case is that the two predicate offenses consisted of (1) aggravated burglary with Heather Kunce as the victim in Case No. 03-CR-592 and domestic violence with Ashley Sherrock as the victim in Case No. 09-CR-212.

Hazel argued in his 26(B) Application that Ms. Sherrock was not a family or household member of his at the time of his offense against her. However, the time to contest that fact was before pleading guilty to domestic violence in Case No. 09-CR-212. That conviction is final upon Hazel's plea of guilty and proof of the plea was sufficient to prove one of the needed predicate offenses.

Hazel's more serious effort at proving actual innocence relates to the conviction for aggravated burglary with Heather Kunce as the victim in Case No. 03-CR-592. At the time she made the complaint in that case, Heather Kunce believed (or at least asserted) that Hazel was the father of her daughter Malaysia. Hazel has now submitted evidence by way of the Clark County Juvenile Court decision, that Earnest Foster IV is the father of Malaysia (Ex. 183 at Attachment to Reply, Doc. No. 23, PageID 2655-2666).

The State's proof of the identity of the offense and the victim in Case No. 03-CR-592

came from Clark County Prosecutor D. Andrew Wilson who, as an assistant county prosecutor, had prosecuted Hazel in that case. Wilson testified that in that case the underlying offense to the aggravated burglary was domestic violence "meaning that the victim was a family or household member" (Trial Tr. Doc. No. 9-6, PageID 2186.) On cross-examination Mr. Marshall established that the indictment in the 03 case did not mention the name of the victim but that the bill of particulars did, although it did not "say anything about a family or household member." *Id.* at PageID 2190.

There are numerous ways to prove under Ohio Revised Code § 2919.25 that two people are members of the same family or household such that an assault by one of them on the other constitutes domestic violence, only one of which is that one of them is the natural parent of a child of whom the other person is the other natural parent. The determination of the Clark County Juvenile Court that Earnest Foster IV is the natural parent of Malaysia Kunce by Heather Kunce precludes a finding that Michael Hazel is the natural father of Malaysia Kunce. While the court order is not itself scientific evidence, it is based on scientific evidence of sufficient reliability to come within that category as used in *Schlup*.

However, the State was not obliged to prove and did not undertake to prove that Hazel was the natural father of Malaysia. Instead, it had only to prove that he was convicted of aggravated burglary where the underlying offense was committed against a family or household member. It succeeded in doing that by proving that the underlying offense was domestic violence, that Heather Kunce was named in the bill of particulars, and that Hazel pled guilty under those circumstances. Having pled guilty, he waived his opportunity to put the State to its proof of the underlying domestic violence offense.

Hazel has offered no excuse for his delay in presenting the new evidence. He obviously

knew in 2004 that he was not the father of Malaysia Kunce because he has asked this Court to compel production of the DNA testing he and Miss Kunce underwent then as to the paternity of the child.  The question of whether the underlying offense to the aggravated burglary was domestic violence and the plea of guilty therefore qualified as predicate for enhancement of the degree of the current domestic violence charge was known to him and his counsel at the time of trial.  While evidence does not have to be newly-discovered to qualify under *Schlup, supra, McQuiggin, supra,* notes that delay in presenting it goes to its credibility in proving actual innocence.

One of the other ways the State could have proved Hazel was guilty of domestic violence against Heather Kunce was to prove he was putative father of Malaysia.  See Ohio Revised Code § 2919.25(F)(1)(b).  A putative parent is an alleged biological parent.  Black's Law Dictionary (10th ed.) at 725.  At least when she made the domestic violence complaint against him, Heather Kunce alleged that he was the father of her daughter. (See Exhibit 150 at Doc. No. 16, Ex. 4, PageID 2438.)  That allegation had sufficient apparent strength to allow the Juvenile Court to order Hazel to submit to the DNA testing whose production he sought to compel.

Hazel has sometimes argued his actual innocence claim in terms of what is in the verdict forms or the indictment.  But the Supreme Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Hazel's tendered new evidence does not create a credible claim of actual innocence within the meaning of *Schlup* and therefore cannot be used to excuse any of his multiple procedural defaults.  That includes his procedural defaults on Ground Seven which should be dismissed with prejudice.

**Ground Eight:  Refusal to Provide Deputy Tillman's Statement to the Jury**

In his Eighth Ground for Relief, Hazel asserts he was deprived of a fair trial when the trial judge refused to allow Deputy Tillman's statement to be given to the jury during deliberations.  The Warden asserts this claim is noncognizable (Return of Writ, Doc. No. 10, PageID 2358-59).  Hazel makes no response to this defense and it is clearly correct.

The Warden also asserts Ground Eight is procedurally defaulted because it was available on direct appeal and not raised *Id.* at PageID 2373-74.  Hazel admits the claim was omitted on direct appeal, but says that was ineffective assistance of appellate counsel (Traverse, Doc. No. 23, PageID 2626-28).  Before ineffective assistance of appellate counsel may be used to excuse a procedural default, the ineffective assistance of appellate counsel claim must be submitted to the state courts for decision.  *Edwards v. Carpenter*, 529 U.S. 446 (2000). Hazel did that in his 26(B) application, but this Court has determined under Ground Four, *supra*, that the Second District's decision that omission of this assignment of error was not ineffective assistance of appellate counsel is not itself an unreasonable application of relevant Supreme Court precedent.

Alternatively, the claim is without merit.  The Second District dealt with this claim in its decision on Hazel's 26(B) application and found that the document was in the hands of the defense and was never offered as an exhibit.  *State v. Jackson*, Case No. CA2011 (2nd Dist. June 27, 2012)(unreported, copy at Doc. No. 9-2, PageID 918-19).

On all three bases, Ground Eight should be dismissed with prejudice.

**Ground Nine:  Improper Jury Instructions**

In his Ninth Ground for Relief, Hazel asserts he was deprived of a fair trial by "incomplete and fraudulent" jury instructions.  The Warden asserts this claim is procedurally defaulted by failure to raise it on direct appeal (Return of Writ, Doc. No. 10, PageID 2374-76).  Hazel seeks to excuse the default on the same basis as with Ground Eight and the proffered excuse is unavailing, for the same reasons given as to Ground Eight.

Alternatively, the claim is without merit.  The Second District found the complained-of instructions were an accurate statement of Ohio law.  *State v. Jackson*, Case No. CA2011 (2nd Dist. June 27, 2012)(unreported, copy at Doc. No. 9-2, PageID 917-18).

Ground Nine should be dismissed with prejudice.

**Ground Ten:  Denial of Due Process by Permitting a State Response**

In his Tenth Ground for Relief, Hazel claims he was deprived of due process of law when the State was permitted to respond to his petition for post-conviction relief by submitting proposed findings of fact and conclusions of law when the case was remanded to the trial court.

The Tenth Ground for Relief is completely without merit.  There is no precedent of the United States Supreme Court which prohibits allowing a State to respond in these circumstances.

**Ground Eleven:  Improper Verdict Forms**

In his Eleventh Ground for Relief, Hazel claims the verdict forms in his case are

48

improper because (1) the statutory subsections of conviction are not included, (2) the verdicts are not signed (3) the degree of felony is not included, (4) there is no finding of valid aggravating elements, (5) there is no finding that Hazel and Sheets are household or family members, were persons living as spouses, or had a child in common, (6) there is no finding that the aggravated burglary in Case No 03-CR-592 involved a family of household member, (7) there is not finding that Hazel committed domestic violence against a family or household member in Case No. 09-CR-212, and (8) the trial court did not have subject matter jurisdiction.

The Warden asserts Ground Eleven is procedurally defaulted on the same basis as Ground Seven (Return of Writ, Doc. No. 10, PageID 2372-73).  Hazel offers no separate analysis on this claim and the Court agrees that Ground Eleven should be dismissed with prejudice as procedurally defaulted.  The Court also notes that the Common Pleas Court has subject matter jurisdiction over all felony offenses committed within its territorial jurisdiction.


### Ground Twelve:  Void Indictment in Case No. 10-CR-828


In his Twelfth Ground for Relief, Hazel asserts the indictment in Case No. 10-CR-828 is void for failure to charge the essential elements of the offense alleged therein.

The Warden asserts this claim is not cognizable in habeas corpus because there is no federal constitutional right to grand jury indictment (Return of Writ, Doc. No. 10, PageID 2356-58, citing, inter alia, *Hurtado v. California*, 110 U.S. 516 (1884)).  In his Traverse, Hazel relies on the Fifth Amendment (Doc. No. 23, PageID 2623-24).  But the Fifth Amendment right to grand jury indictment has not been held to apply to the States.  *McDonald v. Chicago*, 561 U.S.___, 130 S. Ct. 3020 (2010).

Ground Twelve should be dismissed with prejudice.

**Ground Thirteen:  Void Indictment in Case No. 10-CR-808**

Ground Thirteen raises the same claims as to Case No. 10-CR-808 as are raised in Ground Twelve as to Case No. 10-CR-828.  It should be dismissed with prejudice for the same reasons.

**Ground Fourteen:  Denial of Due Process by Allowing State to Respond**

In Ground Fourteen, Hazel essentially repeats the claims made in Ground Ten.  Ground Fourteen should be dismissed with prejudice on the same basis as Ground Ten.

**Ground Fifteen:  Denial of Due Process by Consolidation**

In his Fifteenth Ground for Relief, Hazel claims he was denied due process when the Second District Court of Appeals consolidated his appeals from denial of his petition for post-conviction relief with appeals from denial of his motion for relief from judgment under Ohio R. Civ. P. 60(b)(5) and his motion for leave to propound interrogatories

Hazel cites no Supreme Court precedent for the notion that consolidation of related appeals deprives a litigant of due process of law.  The Fifteenth Ground for Relief should be dismissed as without merit.

**Ground Sixteen:  "Fraud" By the Prosecutor and the Trial Court**

In his Sixteenth Ground for Relief, Hazel asserts the prosecutor and trial judge committed "fraud" on him by convicting him on the face of the supposed facts he recites in the Supporting Facts.  Hazel plainly  misunderstands the concept of fraud. Under Ohio law, fraud occurs when there is (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54 (1987), *citing Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St. 3d 69, ¶2 of the syllabus (1986); and *Cohen v. Lamko, Inc*., 10 Ohio St. 3d 167 (1984).

There are no grounds in the record for accusing either the prosecutor or the trial judge of fraud.  Hazel has not shown the prosecutor made any untrue representations to the judge or jury which the prosecutor knew to be untrue.

To the extent Hazel relies on the failure to prove certain facts which he believes are essential to his conviction, that claim has been dealt with in the analysis of the insufficiency of the evidence claim under Ground One.

Ground Sixteen should be dismissed with prejudice.

**Ground Seventeen:  Convictions are Unconstitutional**

Hazel's Seventeenth Ground for Relief is merely a restatement of his claim that there is insufficient evidence to convict.  It should be dismissed with prejudice on the same basis as Ground One.

**Ground Eighteen:  Denial of Due Process Re Petition for Post-Conviction Relief**

In his Eighteenth Ground for Relief, Hazel again claims he was dealt with unconstitutionally when the State was allowed to file proposed findings of fact and conclusions of law.  No United States Supreme Court precedent prohibits that practice.  Hazel also claims the actual findings are "fraudulent."  This is but another inept way of raising the same claim made in Ground One.

Ground Eighteen should be dismissed with prejudice.

**Ground Nineteen:  Failure of the State to Answer Interrogatories**

In his Nineteenth Ground for Relief, Hazel asserts his Fifth, Sixth, and Fourteenth Amendment rights were violated by the refusal of the State to answer under oath the interrogatories he posed under Ohio R. Civ. P. 33.  There is no such constitutional right and Hazel fails to cite any Supreme Court precedent which establishes such a right.  The Nineteenth Ground for Relief should be dismissed with prejudice.

**Ground Twenty:  Failure to Address Conflict**

In his Twentieth Ground for Relief, Hazel asserts he was denied his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments when the asserted conflict between the Second District's decision in this case and that of the Logan County Court of Appeals in *State v. McKinley*. Logan App. No.8-05-14. 2006-Ohio-2507, "was not addressed properly within the rules of the law."  Even if there is a clear conflict between the decisions of two intermediate courts of appeal in Ohio, there is no federal constitutional right to have that conflict certified to the Ohio Supreme Court or to have it resolved by that court.  Ground Twenty should be dismissed with prejudice for failure to state a claim upon which habeas corpus relief can be granted.

**Ground Twenty-One:  Failure to Address Conflict**

In Ground Twenty-One, Hazel makes the same claims about a conflict of decisions that he raised in Ground Twenty but with respect to different decisions.  Ground Twenty-One should be dismissed with prejudice on the same basis as Ground Twenty.

**Ground Twenty-Two:  Failure to Address Conflict**

In Ground Twenty-Two, Hazel makes the same claims about a conflict of decisions that he raised in Ground Twenty but with respect to different decisions.  Ground Twenty-Two should be dismissed with prejudice on the same basis as Ground Twenty.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition and Amended Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

August 15, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).