# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MICHAEL HAZEL,

        Petitioner,       :    Case No. 3:13-cv-332

  - vs -                              District Judge Timothy S. Black
                                         Magistrate Judge Michael R. Merz

WARDEN, Chillicothe
  Correctional Institution,

                                        :

        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner Michael Hazel's Objections (Doc. No. 41) to the Magistrate Judge's Report and Recommendations (the "Report," Doc. No. 36). Judge Black has recommitted the case for reconsideration in light of the Objections (Doc. No. 42). The Report recommended that all twenty-two grounds for relief in the Petition (Doc. No. 1) and Amended Petition (Doc. No. 5) be dismissed with prejudice. The Objections are dealt with seriatim below.

In many places in the Objections, Hazel has made factual assertions that are not supported by record evidence; each of these will be noted as it occurs.

**Ground One: Insufficient Evidence on Domestic Violence Charges**

Hazel was convicted of two counts of domestic violence as a felony and sentenced to five years incarceration on each count. The jury found that he had previously been convicted of

1

domestic violence and of aggravated burglary involving a family or household member and that the victim, Monica Sheets, was pregnant at the time of the offenses.  In Ground One Hazel asserts all the domestic violence charges against him should have been dismissed in that there was insufficient evidence to convict. The Report divides its analysis between a "pregnancy" subclaim and a "family or other household member" subclaim.

**Pregnancy Subclaim**

With respect to the pregnancy subclaim, the Second District Court of Appeals declined to decide on appeal whether an unborn but viable fetus constitutes a child for purposes of the Ohio domestic violence statute.  Instead, it affirmed on the alternative specification, to wit, that Hazel was a family or other member of the victim's household when the assaults occurred.  Because the claim had been raised on appeal but not decided by the court of appeals, the Report analyzed it *de novo*, i.e., without AEDPA deference.

Hazel made both a statutory interpretation and constitutional argument.  He said he could not be the putative father of Ms. Sheets' child because the child was unborn and the domestic violence statute does not include unborn children.  In overruling this argument, the trial judge relied on *State v. Lopp*, 2010-Ohio-1432, 2010 Ohio App. LEXIS 1199 (8th Dist. 2010), which held that Lopp was within the definition of putative other parent when the victim was thirty-nine weeks pregnant with Lopp's unborn child.  *Id.* at ¶ 13, n. 2, cited in Report, Doc. No. 36, at PageID 2841-42.  The Report found Hazel came within the statute because "Hazel does not deny, on the dates in question, Sheets was carrying a viable fetus that he had fathered. . ." *Id.* at PageID 2840-41.

Hazel now objects to the assertion that he "does [not] and has not conceded to fathering a child with Miss. Sheets." (Objections, Doc. No. 41, PageID 2893.) Hazel cites several places in the record which supposedly support this objection.

**Trial Tr., Doc. No. 9-6, PageID 2003-04**. This is part of the cross-examination of Monica Sheets where she says she was pregnant on all three dates of the alleged offenses and that Hazel had told her he did not believe the child was his but that she knew better.

**Trial Tr., Doc. No. 9-6, PageID 2205-38.** This is part of the Rule 29 argument. The prosecutor says "She was pregnant with his child." Mr. Marshall, the defense attorney, responds "So they did not have a child in common at the time that any of these offenses occurred." In response to a question from the court, Marshall says there is a dispute that Hazel is the father. He continues, however, with his statutory argument that "child" does not include "unborn child" and "putative father" refers only to alleged fathers of children who have been born. He admits he does not have any case law in point. *Id.* at PageID 2209-10.

**Notice of Legal Instruction to James D. Marshall, Doc. No. 25.** This is an attempt made long after this case was filed to get Mr. Marshall to arrange a DNA test for Hazel and Miss Sheets.

The first of these citations does represent a denial of parentage by Hazel to Sheets; the latter two citations certainly represent a questioning of parentage, if not a denial. In contrast with these citations, the Magistrate Judge notes the following in the sixty-nine page Traverse (Doc. No. 23):

**PageID 2598** "Mr. Hazel and Miss Sheets never lived together and did not have any children with each other one the date's [sic] in question."

**PageID 2629** The same language – did not have a child in common on the dates in question – is repeated several times.

**PageID 2631**  The same language – "did not have a child together on the dates in question" is repeated.  Hazel goes on to argue:

> Of course Miss Sheets had a viable fetus on the dates in question, she was in her last trimester.  But that was not Mr. Hazel and Mr. Marshall's argument.  Mr. Hazel and Mr. Marshall's argument was that Mr. Hazel had never lived with Miss Sheets before, and the fact that even if Mr. Hazel and Miss Sheets had a DNA Test and Mr. Hazel was in fact the father of her child, he was still not the father of her child on the dates in question.  On the dates in question, Mr. Hazel could only have been the father of Miss Sheets fetus.

**PageID 2633**  The same language – "did not have a child together on the dates in question" is repeated.

**PageID 2637**  Here there is a variant: "on the dates in question, she and Mr. Hazel did not have any children in common."  The phrase "did not have a child in common on the dates in question" is repeated three more times on this page.

**PageID 2646**  The phrase "did not have a child in common on the dates in question" is repeated here.

**PageID 2648**  The phrase "did not have a child in common on the dates in question" is repeated here.

**PageID 2649**  "[T]hey [the jury] could not state [in the verdict] that Mr. Hazel and Miss Sheets had a child in common on the dates in question, because Miss Sheets was in fact pregnant on the dates in question.  Furthermore, Mr. Hazel and Miss Sheets still have not had a DNA Test for the child in question."

Thus in his extended argument on the case, Hazel never denies he is the father of the child.  Instead, he uses, more than a dozen times, exactly the same phrase, "child in common on the dates in question."  The Magistrate Judge thus read this repeated argument as supporting

4

Hazel's statutory interpretation claim that being the father of an unborn child didn't "count" for domestic violence purposes and not as denying that he was the father of the child born two weeks after he severely beat Miss Sheets.

The Magistrate Judge now understands that Mr. Hazel is not conceding paternity. To the extent the Report's statement that "Hazel does not deny that, on the dates in question, Sheets was carrying a viable fetus he had fathered" can be read as asserting Hazel **conceded** paternity, it is withdrawn. There is, however, no flat denial of paternity in the Traverse.

All of this is relevant to the statutory interpretation question. As the trial court did in following *State v. Lopp, supra*, it is quite reasonable to read the domestic violence statute as applying to putative fathers even before the child is born. Indeed, if a woman is pregnant and a particular man with whom she has had sexual intercourse denied the paternity, as Hazel did to Sheets, there is a motive for domestic violence, often carried to the extreme of attempting to cause a miscarriage.

While the Second District did not decide the statutory interpretation question and this Court could sidestep it because the conviction is supportable on the alternative element of family or household member, we may decide it because it is squarely presented. In deciding it, we must follow the state case law in determining the meaning of the statute. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), see Wayne A. Logan, *Erie* and the Federal Criminal Courts, 63 Vanderbilt L. Rev. 1243 (2010), concluding that most federal courts follow *Erie* in applying state law in criminal cases. The only case on point cited to this Court is *Lopp, supra*, and it supports the trial judge's conclusion in this case that the domestic violence statute applies to the putative father of an unborn child.

In addition to a statutory interpretation argument about the pregnancy subclaim, Hazel

made a constitutional claim, to wit, that extending the domestic violence statute to putative fathers of unborn children was somehow an unreasonable application of *Roe v. Wade*, 410 U.S. 113 (1973).  The Report rejected this argument (Report, Doc. No. 36, PageID 2841-42) and Hazel has made no objection to this part of the analysis.

"**Family or Other Household Member" Subclaim**

In affirming the conviction, the Second District did not reach this pregnancy subclaim question of statutory interpretation because the jury had also found Hazel guilty of the alternative element – being a family or household member.  *State v. Hazel*, 2012-Ohio-835, 2012 Ohio App. LEXIS 727 (2nd Dist. March 2, 2012).  The Report concluded there was sufficient evidence to support conviction under this alternative element as well and therefore gave AEDPA deference to the Second District's decision (Report, Doc. No. 36, PageID 2842-43).

Hazel's Objections to this part of the Report cover four pages (Doc. No. 41, PageID 2894-97) and are often supported by claims for which there is no record or legal support.

Hazel claims the grand jury has only ten days to indict, but cites no legal authority for that proposition.  He asserts the prosecutor attempted to obtain an indictment multiple times between September and November 2010, but was unsuccessful because Monica Sheets, the victim, was a reluctant witness.  He emphasizes the various words and phrases she used to describe her relationship with Hazel as if they proved that he was not a household or family member.  All of these verbal formulations were before the jury.  Taken together, they were enough to support the jury's finding.

**Ground Two: Cumulative Error in Evidentiary Rulings**

In his Second Ground for Relief, Hazel contends that the accumulated errors in evidentiary rulings by the trial judge denied him a fair trial. The Warden argued this claim as not cognizable in habeas corpus and the Report agrees (Report, Doc. No. 36, PageID 2843-44).

Instead of arguing cognizability, Hazel had instead argued Ground Two as a claim of racial bias in jury selection. The Report found this claim procedurally defaulted by failure to raise it appropriately in the state courts. *Id*. at 2845. Hazel admits this claim was not raised, but spends some time essentially arguing "everyone knows" facts which would show his jury was selected in a way that resulted in a racially biased panel. (Objections, Doc. No. 41, PageID 2898-99.) Habeas relief cannot be granted on such a basis.

**Ground Three: Prosecutorial Misconduct**

The Report found Ground Three procedurally defaulted by failure to include it in appeal to the Ohio Supreme Court. Hazel's Objections request that this default be excused by his proof of actual innocence (Doc. No. 41, PageID 2899).

**Ground Four: Ineffective Assistance of Appellate Counsel**

In his Fourth Ground for Relief, Hazel claimed he received ineffective assistance of appellate counsel with respect to multiple assignments of error not raised on direct appeal. The Report concluded that the Second District Court of Appeals had dealt with Hazel's ineffective

7

assistance of appellate counsel claim on the merits and rejected it on the merits when deciding his Rule 26(B) Application to Reopen. *State v. Hazel, supra,* at Doc. No. 9-2, PageID 886.  The Report concluded this was an objectively reasonable application of *Strickland* and its appellate advocacy progeny (Doc. No. 36, PageID 2851-52).

Hazel objects that if appellate counsel had complained on appeal of the presence in the verdict forms of the reference to the aggravated burglary conviction in case No. 03-CR-592 as being against a family or household member, that was a "dead bang winner." (Objections, Doc. No. 41, PageID 2900.)  However, the Second District, the very court which would have had to accept the argument, considered this claim on the merits and found it was not a "dead bang winner."

**Ground Five:  Ineffective Assistance of Trial Counsel**

Hazel's Objections to the dismissal of this claim are conclusory and do not require further analysis (Objections, Doc. No. 41, PageID 2901).

**Ground Six:  Defective Indictments**

In his Sixth Ground for Relief, Hazel contends that the 10-CR-828 indictment and Count One of the 10-CR-808 indictment are void because they do not include the specific subsections under which he was charged.  The Report concluded this claim was procedurally defaulted and the default was not excused by ineffective assistance of appellate counsel because, on Hazel's 26(B) Application, the Second District found the claim would have had no merit (Doc. No. 36,

8

PageID 2854-55).

In rejecting this Ground for Relief, the Magistrate Judge noted that the Fifth Amendment's grand jury clause was not applicable to the States (Report, Doc. No. 36, PageID 2854, *citing Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975)).

Hazel objects first by relying on *State v. Colon,* 118 Ohio St. 3d 26 (2008). *Colon* was overruled by the Ohio Supreme Court before Hazel's case reached the court of appeals. *State v. Horner*, 126 Ohio St. 3d 466, 473 (2010). Hazel also objects by pointing out that Article I, § 10 of the Ohio Constitution contains a grand jury guarantee. That is correct, but irrelevant to this case; a federal habeas court can grant relief only on the basis of violations of the Federal Constitution.

Lastly, Hazel objects that the Report does not discuss his claim of structural error. Structural error is a doctrine which applies to exclude consideration of whether a particular constitutional error is harmless or not. If an error is found to be "structural," habeas relief must be granted because a structural error by definition cannot be harmless. *Arizona v. Fulminante*, 499 U.S. 279 (1991). But if there is no constitutional error at all, there cannot be structural error.

**Ground Seven:  Improper Verdict Forms**

In his Seventh Ground for Relief, Hazel claims the verdict forms in his case are improper and therefore his convictions are void. The Report concluded this claim was procedurally defaulted and not excused by ineffective assistance of appellate counsel for the reasons stated with respect to Ground Four  (Report, Doc. No. 36, PageID 2855).

It is within Ground Seven that Hazel makes his actual innocence claim. He claims that aggravated burglary is not within the description of prior offenses which enhance domestic violence to the felony level, noting that Ohio Revised Code § 2929.11 is not listed expressly. However, the burglary statute, a lesser-included offense of aggravated burglary, proscribed by Ohio Revised Code § 2911.12, is expressly listed.

For the reasons given at length in the Report (Doc. No. 36, PageID 2855-61), Hazel has not presented a convincing case of actual innocence. In particular, the offense of aggravated burglary to which Hazel pled guilty in the 2003 case does not include as an element that the victim was a household or family member. Thus, when seeking to use the prior conviction as an enhancing conviction in the later case, the State had to prove the victim in the prior case met that description. This it did.

**Ground Eight:  Refusal to Provide Deputy Tillman's Statement to the Jury**

In his Eighth Ground for Relief, Hazel asserts he was deprived of a fair trial when the trial judge refused to allow Deputy Tillman's statement to be given to the jury during deliberations.

The Report concluded this claim did not state a constitutional right, that it was procedurally defaulted because not raised on direct appeal, and that it had no merit because the statement was in defense hands and never offered as an exhibit (Doc. No. 36, PageID 3862).

Although Hazel objects (Doc. No. 41, PageID 2908), no further analysis is needed.

**Ground Nine:  Improper Jury Instructions**

In his Ninth Ground for Relief, Hazel asserts he was deprived of a fair trial by "incomplete and fraudulent" jury instructions. The Report concluded the claim was procedurally defaulted and without merit because the Second District found the instructions were a correct statement of Ohio law (Doc. No. 36, PageID 2863).

Hazel's objections on this Ground rely on his prior statutory interpretation argument about unborn children and his factual claim about whether it was proved he was a family or household member of Ms. Kunce (Objections, Doc. No. 41, PageID 2908).

No further analysis is warranted.


**Ground Ten: Denial of Due Process by Permitting a State Response in Post-Conviction**

No further analysis is needed.


**Ground Eleven: Improper Verdict Forms**

No further analysis is needed.


**Grounds Twelve and Thirteen: Void Indictments in Case Nos. 10-CR-828 and 10-CR-808**

No further analysis is needed. Hazel relies on *State v. Colon, supra*, which has, as noted above, been overruled.

**Ground Fourteen:  Denial of Due Process by Allowing State to Respond**

No further analysis is needed beyond that offered on Ground Ten.

**Ground Fifteen: Denial of Due Process by Consolidation**

No further analysis is needed.

**Ground Sixteen: "Fraud" By the Prosecutor and the Trial Court**

No further analysis is needed.

**Ground Seventeen: Convictions are Unconstitutional**

Hazel's Seventeenth Ground for Relief is merely a restatement of his claim that there is insufficient evidence to convict. It should be dismissed with prejudice on the same basis as Ground One.

**Ground Eighteen: Denial of Due Process Re Petition for Post-Conviction Relief**

No further analysis is necessary

**Ground Nineteen:  Failure of the State to Answer Interrogatories**

No further analysis is necessary

**Grounds Twenty, Twenty-One, and Twenty-Two:  Failure to Address Conflicts**

No further analysis is necessary

*Brady* **Violations:**

Apart from the separately numbered Grounds for Relief, Hazel objects that the Magistrate Judge did not address any of his claimed violations of *Brady v. Maryland*, 373 U.S. 83 (1963)(Objections, Doc. No. 41, PageID 2911).  There are no separately pled *Brady* violations in the Petition.  Hazel cites without, reference to any page number, his Principal Brief (Doc. No. 6, 222 pages).  Any claim which may be buried somewhere in that document has not been sufficiently pled to require separate analysis.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully again recommends the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

September 5, 2014.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).